IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ARLEEN KRIPPENE,

      Plaintiff,

v.                                        No. 12-cv-0784 SMV/ACT

JOHNNY VALDEZ, FELIX SAAVEDRA,
HARRY HALL, BILL MARION,
TONY MACE, RON MORLANG,[1] and
YOLANDA SEDILLO,

      Defendants.

### ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

THIS MATTER is before the Court on Defendant Tony Mace's Motion for Summary Judgment Based on Qualified Immunity and Memorandum of Points and Authorities [Doc. 42] ("Mace Motion"), filed on May 17, 2013, as well as Defendants Johnny Valdez, Felix Saavedra, Harry Hall, Bill Marion, Ron Morlang, and Yolanda Sedillo's Motion for Summary Judgment Based on Qualified Immunity and Memorandum of Points and Authorities in Support Thereof [Doc. 46] ("Valdez Motion"), filed on June 14, 2013. Plaintiff filed her response in opposition to the Mace Motion on August 22, 2013, and her response to the Valdez Motion on August 29, 2013. Plaintiff's Response to [the Mace Motion] [Doc. 54] ("Response to Mace Motion"); Plaintiff's Response to [the Valdez Motion] [Doc. 58] ("Response to Valdez Motion"). On September 9, 2013, Defendant Mace replied, and on September 11, 2013, all

---

[1]  Pursuant to a stipulation by the parties, Defendant Ron Morlang was dismissed with prejudice on August 29, 2013. Stipulation of Dismissal of Ron Morlang with Prejudice [Doc. 57].

remaining defendants replied.  Reply to Plaintiff's Response to [the Mace Motion] [Doc. 60] ("Mace Reply"); Reply to Plaintiff's Response to [the Valdez Motion] [Doc. 62] ("Valdez Reply").  A hearing on the motions was held on September 12, 2013.  Clerk's Minutes [Doc. 66].  All parties filed consents to proceed before a U.S. Magistrate Judge.  Notice of Rule 73 Consent [Doc. 5].  The Court, having considered the briefs, oral arguments, and relevant law, and being otherwise fully advised in the premises, **FINDS** that Defendants' motions are well-taken in part and will be **GRANTED IN PART** and **DENIED IN PART**.

## BACKGROUND

In her complaint, Plaintiff brings four claims under 42 U.S.C. § 1983: (1) illegal search and seizure in violation of the Fourth Amendment; (2) deprivation of property in violation of the Fourteenth Amendment; (3) arrest without probable cause in violation of the Fourth and Fourteenth Amendments; (4) and malicious prosecution in violation of the Fourth and Fourteenth Amendments.  Complaint [Doc. 1-1] at ¶¶ 90–124.[2]  Defendants move for summary judgment on all claims against them on the basis of qualified immunity.  Mace Motion [Doc. 42] at 4; Valdez Motion [Doc. 46] at 4.  On a motion for summary judgment based on qualified immunity, the Court states the facts herein in the light most favorable to Plaintiff.  *See Kaufman v. Higgs*, 697 F.3d 1297, 1300 (10th Cir. 2012).

Plaintiff is a 73-year-old retiree who was operating an animal sanctuary known as the St. Francis Animal Sanctuary at her place of residence in Cibola County.  Plaintiff's Complaint for Civil Rights Violations, and Tort Claims [Doc. 1-1] ("Complaint") at ¶¶ 12–13.  Defendants

---

[2]  In her response, Plaintiff discusses conspiracy as a separately actionable claim under § 1983.  Response to Valdez Motion [Doc. 58] at 16–17.  However, the Court is unable to find anything in Plaintiff's original complaint pleading such a claim.  Should Plaintiff intend to bring such a claim, Plaintiff would need to follow Fed. R. Civ. P. 15 to amend her complaint to allege conspiracy under § 1983.  As a result, the Court does not address the parties' arguments regarding conspiracy as an independently actionable claim under § 1983.

are law enforcement officers employed by the Cibola County Sheriff's Office.  Answer [Doc. 6] at 2−3, ¶¶ 4−11.  After the County received a written complaint that Plaintiff's dogs were living in poor conditions and possibly involved in fights, Defendants Mace and Marion visited Plaintiff's property on May 4, 2009.  Mace Motion [Doc. 42] at 4, ¶ 3; Response to Mace Motion [Doc. 54] at 16, ¶ 3.  Plaintiff had approximately eighty dogs on her property at that time, in addition to other animals.  Mace Motion [Doc. 42] at 6, ¶ 10; Response to Mace Motion [Doc. 54] at 17, ¶ 10.  Defendant Mace was able to see the ribcages of some of the dogs.  Mace Motion [Doc. 42] at 6, ¶ 13; Response to Mace Motion [Doc. 54] at 17, ¶ 13.  Plaintiff admitted to the officers that she was having difficulty providing food for the large number of animals. Mace Motion [Doc. 42] at 6–7, ¶¶ 17–18; Response to Mace Motion [Doc. 54] at 17, ¶¶ 17–18.

On June 8, 2009, Defendant Mace returned to Plaintiff's property with Defendant Valdez. Mace Motion [Doc. 42] at 8, ¶ 25; Response to Mace Motion [Doc. 54] at 18, ¶ 25.  While there, Defendant Mace counted close to one hundred dogs but saw no food in the animal pens.  Mace Motion [Doc. 42] at 9, ¶ 31; Response to Mace Motion [Doc. 54] at 19, ¶ 31.  He then prepared an Affidavit for Application for Warrant to Seize Cruelly Treated Animals and submitted it to a state magistrate who subsequently issued a warrant to seize the animals.  *See* Affidavit for Application for Warrant to Seize Cruelly Treated Animals [Doc. 54-2] ("Mace Affidavit"); Warrant to Seize Animals [Doc. 54-4].

On June 10, 2009, Defendants arrived at Plaintiff's property with the warrant.  Plaintiff signed a Permission to Search form and a Release of Ownership Worksheet.  However, she contends that she signed both documents as a result of coercion, misrepresentation, threats, and promises made by Defendants.  Response to Mace Motion [Doc. 54] at 19, ¶ 42.  Shortly

3

thereafter, Plaintiff was arrested by Deputy Morlang, and 93 dogs, 10 cats, and 4 chickens were seized.  Return and Inventory [Doc. 42-5] at 2.  Plaintiff alleges that Defendants also seized a rabbit which was not listed on the Return and Inventory.  Response to Mace Motion [Doc. 54] at 32.

Veterinarian Patricia Norris examined the animals at the time of the seizure.  As a result of her examination, at least one animal was euthanized at the scene.  *Compare* Valdez Motion [Doc. 46] at 6, ¶ 9, *with* Response to Valdez Motion [Doc. 58] at 5, ¶ 9.  Of the  86 animals she examined, Dr. Norris determined that 20 were emaciated and 12 were severely emaciated.  Preliminary Report [Doc. 46-5] at 2.  Additionally, two animal carcasses were found.  *Id.* at 1.

The following day, Defendants Mace, Marion, and Sedillo returned to Plaintiff's property with four inmates from the Cibola County Detention Center.  Mace Motion [Doc. 42] at 11, ¶ 49.  Defendants took down fencing and removed miscellaneous documents, 3 small pet carriers, a "pet scanner," 40 chain-link-fence panels, 2 chain-link dog kennels, and 12 thirty-gallon trash cans containing animal food and medical supplies.  *Id.* at 12, ¶ 50.

Plaintiff was indicted by a grand jury on multiple counts of extreme cruelty to animals after criminal complaints were filed by Deputy Morlang and Defendant Marion.  At Plaintiff's subsequent criminal trial, Defendant Mace admitted under oath that certain statements contained in the Mace Affidavit were not true.  Transcript of Proceedings [Doc. 54-3] at 3.  Due to prosecutorial misconduct unrelated to Defendant Mace's testimony, the trial ended in a mistrial and a *nolle prosequi* was filed on the basis that "[t]he evidence [was] no longer available."  Mace Motion [Doc. 42] at 12, ¶¶ 57–58; Response to Mace Motion [Doc. 54] at 21, ¶¶ 57–58.

## <u>UNDISPUTED MATERIAL FACTS</u>

1. Plaintiff was having difficulty providing food for her large number of animals. [Doc. 42] at 6, ¶¶ 16–17; [Doc. 54] at 17, ¶¶ 16–17.

2. On Defendant Mace's first visit to Plaintiff's property, he was able to see the ribcages of some of the dogs.  [Doc. 42] at 6, ¶ 13; [Doc. 54] at 17, ¶ 13.

3. On Defendant Mace's second visit to Plaintiff's property, he saw no food in the animal pens.  [Doc. 42] at 9, ¶ 31; [Doc. 54] at 19, ¶ 31.

4. On June 10, 2009, Plaintiff signed both the Permission to Search form and Release of Ownership Worksheet.  [Doc. 42] at 10, ¶ 42; [Doc. 54] at 19, ¶ 42.

5. On June 11, 2009, the day after Plaintiff's arrest, Defendants Mace, Marion, and Sedillo returned to Plaintiff's property and brought four inmates from the Cibola County Detention Center.  They took down and rolled up 40 chain-link-fence panels from Plaintiff's property.   Additionally, they took 3 small pet carriers, 1 "pet scanner," 2 chain-link dog kennels, 12 thirty-gallon trash cans containing dog and cat food, and several folders of documents.  [Doc. 42] at 12, ¶¶ 49–50; [Doc. 54] at 20, ¶¶ 49–50.

6. The Return and Inventory made June 11, 2009, provides that Defendants also took 93 dogs, 10 cats, and 4 chickens. [Doc. 42] at 12, ¶ 51; [Doc. 54] at 20, ¶ 51.

7. On June 11, 2009, Defendant Marion filed a Criminal Complaint against Plaintiff alleging 15 counts of felony animal cruelty.  [Doc. 46] at 5, ¶¶ 4–5; [Doc. 58] at 4, ¶¶ 4–5.

## <u>LEGAL STANDARD</u>

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Once the movant meets this burden, Rule 56 requires the nonmoving party to designate specific facts showing that there is a genuine issue for trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the

nonmoving party" on the issue. *Liberty Lobby,* 477 U.S. at 248. Facts are material only where they might affect the outcome of the suit. *Id.*

While courts "view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party, the nonmoving party must present more than a scintilla of evidence in favor of his position." *Kerber v. Qwest Grp. Life Ins. Plan*, 647 F.3d 950, 959 (10th Cir. 2011) (citation omitted). To deny a motion for summary judgment, genuine factual issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Liberty Lobby*, 477 U.S. at 250.

However, where a defendant asserts qualified immunity as a defense, a court's analysis of summary judgment motions is modified. The Supreme Court has emphasized that although the purpose of the qualified immunity defense is to provide "an immunity from suit rather than a mere defense to liability," that immunity is "effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). As a result, once a defendant asserts qualified immunity, the burden shifts to the plaintiff to demonstrate both that the defendant violated one of plaintiff's constitutional rights and that the violated right was clearly established at the time of the violation. *Kaufman v. Higgs*, 697 F.3d 1297, 1300 (10th Cir. 2012). If the plaintiff successfully satisfies this "heavy two-part burden," the defendant must then prove that "there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law." *Gross v. Pirtle*, 245 F.3d 1151, 1156 (10th Cir. 2001) (citations omitted).

## DISCUSSION

### I. Plaintiff's Claim of Violation of Her Fourth Amendment Rights

Plaintiff argues that Defendants collectively conspired to violate her right to be free from unreasonable searches and seizures as well as her right to have warrants issue only on probable cause.  Response to Mace Motion [Doc. 54] at 23; Response to Valdez Motion [Doc. 58] at 16. Plaintiff argues that the Mace Affidavit contained false statements, and that those statements were necessary to a finding of probable cause, making the warrant invalid.  Response to Mace Motion [Doc. 54] at 23–26.  Defendant Mace argues that he is entitled to qualified immunity because even without the statements contested by Plaintiff, the remaining portions of the Mace Affidavit provided a substantial basis for the magistrate's finding of probable cause.   Mace Motion [Doc. 42] at 15–19.

Whether a police officer asserting qualified immunity "may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action, assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Messerschmidt v. Millender*, 132 S. Ct. 1235, 1245 (2012) (quoting *Anderson v. Creighton*, 483 U.S. 635, 639 (1987)).  "Where the alleged Fourth Amendment violation involves a search or seizure pursuant to a warrant, the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner" and are thus entitled to qualified immunity.  *Id.*  However, officers do not act in an objectively reasonable manner where "it is obvious that no reasonably competent officer would have concluded that a warrant should issue," or where "the warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable."  *Id.* (internal quotation marks

omitted).  Furthermore, qualified immunity is not available where an officer violates the Fourth Amendment-warrant requirement by "knowingly and intentionally, or with reckless disregard for the truth" including a false statement in the warrant affidavit "necessary to a finding of probable cause." *Clanton v. Cooper*, 129 F.3d 1147, 1154 (10th Cir. 1997) (internal quotation marks omitted).  Where false statements have been included in a warrant affidavit, the existence of probable cause is determined by setting aside the false information and reviewing the remaining contents of the affidavit. *Franks v. Delaware*, 438 U.S. 154, 155–56 (1978); *Wolford v. Lasater*, 78 F.3d 484, 489 (10th Cir. 1996).

In the context of reviewing the issuance of a warrant, the Supreme Court has made clear that the reviewing court must not conduct a de novo probable-cause determination but instead must determine "whether the evidence viewed as a whole provided a 'substantial basis' for the Magistrate's finding of probable cause." *Massachusetts v. Upton*, 466 U.S. 727, 732–33 (1984). "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983).  Under New Mexico law, cruelty to animals includes "negligently mistreating," injuring, or "failing to provide necessary sustenance to an animal under that person's custody" and is punishable as a misdemeanor.  NMSA 1978, § 30-18-1(B) (2007).

Here, Plaintiff alleges that all factual statements contained in the Mace Affidavit were false and made knowingly, intentionally, or with reckless disregard for the truth.  Specifically, she alleges that Mace falsely stated that: the animals lived in "an unhealthy environment;" had

8

"little food;" were sometimes not provided water; were kept in excess of "20 dogs per 5x5 pen;" fought with each other causing death and mutilation; were housed in pens "too small to house that many animals;" slept in their own feces; lacked vaccination records; and were not spayed or neutered.  Response to Mace Motion [Doc. 54] at 12–13, ¶¶ 86–101.  Additionally, Plaintiff argues that Defendant Mace purposefully misled the magistrate by stating that the County had received several written complaints about her, while only one complaint was actually lodged; and that Plaintiff had intentionally or maliciously tortured or injured animals.  Response to Mace Motion [Doc. 54] at 12, ¶¶ 90–91 & at 13, ¶¶ 102–03.

Plaintiff does not contest the following statements in the Mace Affidavit: that Defendant Mace had personally visited Plaintiff's property; that Plaintiff owned ninety to one hundred dogs; that dogs were being "negligently mistreated;" that Plaintiff had "failed to provide necessary sustenance" to the dogs; that the Cibola County Sheriff's Office had received a complaint about the welfare of the animals;  and  that Defendant Mace "reasonably believ[ed] that if [the] animals [were] not seized for their health and safety, there [was] a likelihood that many of the dogs could become sick and die."  *Compare* Mace Affidavit [Doc. 54-2] at 1–2, *with* Response to Mace Motion [Doc. 54] at 11–13.

While Plaintiff contests the statement that the animals had "little food," the Court finds that there is no genuine dispute regarding that statement.  A dispute is genuine only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party" regarding that fact.  *See Liberty Lobby*, 477 U.S. at 248.  Plaintiff has admitted that Defendant Mace witnessed the ribcages of some of the dogs during his visits and did not see food in the animal pens.  Response to Mace Motion [Doc. 54] at 17, ¶ 13 & at 19, ¶ 31.  Additionally, Plaintiff

admits she told Defendant Mace she was having difficulty providing food for the animals. *Id.* at 17, ¶¶ 17–18. In light of Plaintiff's admissions, the Court finds that no reasonable jury could find for the Plaintiff on this issue. As a result, the Court treats Defendant Mace's statement in the Mace Affidavit that the animals had little food to be true for the purpose of the *Franks* analysis.

Under *Franks*, the Court must set aside any false statements included in warrant affidavits and determine whether there is still a "substantial basis" for the magistrate's finding of probable cause. *See Wolford*, 78 F.3d at 489. Accordingly, the Court determines that even if it presumes that all other statements contested by Plaintiff are untrue and disregards them, there is still a substantial basis for the magistrate's probable-cause determination. Based on the statement that there was little food for the animals, as well the remaining uncontested statements, the Court determines that a magistrate could have determined that there was a "fair probability" that either negligent mistreatment or failure to provide necessary sustenance was occurring in violation of NMSA 1978, § 30-18-1(B). Thus, Plaintiff cannot meet her burden of showing a violation of a constitutional right with respect to her unreasonable-search-and-seizure claim. As a result, Defendants are entitled to qualified immunity on Plaintiff's unreasonable-search-and-seizure claim.

## II. Plaintiff's Claim of Deprivation of Property Without Due Process in Violation of the Fourth and Fourteenth Amendments

Plaintiff alleges that Defendants conspired to seize, convert, or destroy her animals and other property sometime on or after after June 10, 2009. Response to Mace Motion [Doc. 54] at 32–33; Response to Valdez Motion [Doc. 58] at 10–15. Defendants argue that they are entitled to qualified immunity because Plaintiff relinquished her property rights in the animals by

signing the Release of Ownership Worksheet.  Mace Motion [Doc. 42] at 21–24; Valdez Motion

[Doc. 46] at 16.  Additionally, Defendants argue that Plaintiff relinquished her property rights in

all other property by signing the Permission to Search form, which gave officers permission to

take "any letters, papers, materials, or any other property or things they desire as evidence for

criminal persecution [sic]."  Permission to Search, Ex. 5 to Affidavit of Tony Mace [Doc. 42-1]

at 14.  Lastly, Defendants argue that any property taken was within the scope of the Warrant to

Seize Animals, because the warrant allowed for the seizure of "any items used to facilitate the

care and or maintenance of said animals."   Warrant to Seize Animals [Doc. 42-4] at 1.

Defendants do not contest that taking Plaintiff's property without her consent and outside the

authorization of the warrant would violate Plaintiff's clearly established constitutional rights.

Rather, Defendants argue that the officers' actions were within the scope of Plaintiff's consent as

indicated by the Permission to Search form and Release of Ownership Worksheet, were

authorized by the warrant, and were objectively reasonable.  Mace Reply [Doc. 60] at 20–24;

Valdez Motion [Doc. 46] at 16–17.

Although Plaintiff signed both the Permission to Search form and Release of Ownership

Worksheet, she argues that her consent was coerced, and that the release of her property was not

knowing, intelligent, and voluntary.  Response to Valdez Motion [Doc. 58] at 12; Response to

Mace Motion [Doc. 54] at 28–29.  Plaintiff alleges that she told the officers she could not read

the forms without her glasses and that the officers lied about the contents of the documents.  *Id*.

at 30.  Plaintiff argues that her consent was coerced by the presence of a large number of law

enforcement officers, by threats made by officers that they would simply obtain a warrant and

that her animals would be held in small cages until her trial, and by false promises that all of the animals released would be adopted.  *Id*. at 27–29.

Plaintiff further argues that even if her consent had not been coerced, her consent did not extend to the seizure and destruction of her chickens, rabbit, fences, and "other property"[3] because the Release of Ownership did not cover those items.   Response to Mace Motion [Doc. 54] at 30; Response to Valdez Motion [Doc. 58] at 12, 14.   Furthermore, Plaintiff argues that the Permission to Search form allowed for the collection of evidence only and did not allow for the destruction of any animals or other property.  *Id.* at 14.   Lastly, Plaintiff contends that the warrant did not authorize the seizure of her cats, chickens, and rabbit, as none of those animals was mentioned in either the Warrant to Seize Animals or the Mace Affidavit.   Response to Mace Motion [Doc. 54] at 32.

A.   <u>Plaintiff Voluntarily Consented to the Release of Ownership of Her Dogs and Cats.</u>

Plaintiff argues that her release of ownership was not voluntary or consensual.   Response to Mace Motion [Doc. 54] at 29.   Plaintiff also contends that the Release of Ownership Worksheet is not a valid document because it states that she surrenders and relinquishes ownership of the animals to the "Animal Services Center of Cibola County," which does not exist.  *Id.* at 30.  Defendant Mace argues that the fact that Cibola County did not have an entity named "Animal Services Center" and instead contracted with the City of Grants for animal

---

[3]   Although Plaintiff does particularly describe what "other property" was destroyed, Plaintiff does allege in her Complaint that "Defendants destroyed personal property unrelated to the case," and that Defendants left behind "piles of destroyed property, pipes shoved through dog houses, overturned stairs, and an axe stuck in one of the doghouses."   Complaint [Doc. 1-1] at 9, ¶¶ 80–81.   As a result, the Court construes Plaintiff's references to "other property" as reference to her doghouses, stairs, and unspecified "personal property."   The Court's use of the term "other property" excludes Plaintiff's animals and fences.

services does not change the fact that Plaintiff voluntarily released her animals to Cibola County. Mace Reply [Doc. 54] at 30.

"'Voluntary consent' consists of two parts: (1) the law enforcement officers must receive either express or implied consent, and (2) that consent must be freely and voluntarily given." *United States v. Jones*, 701 F.3d 1300, 1317 (10th Cir. 2012). The Fourth Amendment requires that consent not be "coerced, by explicit or implicit means, [or] by implied threat or covert force." *Schneckloth v. Bustamonte*, 412 U.S. 218, 228 (1973). Whether coercion has occurred is a question of fact to be determined from the totality of all circumstances. *Id.* at 227. When considering the totality of the circumstances, relevant considerations include:

> physical mistreatment, use of violence, threats, promises, inducements, deception, trickery, or an aggressive tone, the physical and mental condition and capacity of the defendant, the number of officers on the scene, and the display of police weapons. Whether an officer reads a defendant his *Miranda* rights, obtains consent pursuant to a claim of lawful authority, or informs a defendant of his or her right to refuse consent also are factors to consider in determining whether consent given was voluntary under the totality of the circumstances.

*Jones*, 701 F.3d at 1318. While deception and trickery are not categorically unlawful, they are relevant to the calculus where they have a significant impact on the nature of consent given. *See id*. at 1319 n.9 (describing deceit that creates the impression of physical danger or a misrepresentation of the officer's objective as something other than criminal prosecution). Statements by police officers that they will obtain a search warrant are not considered coercive per se. *United States v. Cruz-Mendez*, 467 F.3d 1260, 1267 (10th Cir. 2006).

Here, Plaintiff admits that she signed the forms. Thus, officers received express consent, satisfying the first part of the inquiry. Plaintiff states that she signed the forms under the belief that the animals were going to be adopted. Affidavit of Arleen Krippene [Doc. 54-1] at 4. Thus,

Plaintiff was aware at the time she signed the form that the result of her act would be that she would lose her right to possession of the animals.  Assuming that officers misled Plaintiff about the likelihood of adoption, the Court finds that this is not the type of misrepresentation that necessarily vitiated Plaintiff's consent.  *See Jones*, 701 F.3d at 1319 n.9.

Plaintiff contends she did not read what she signed because she did not have her reading glasses.  However, Plaintiff makes no effort to explain how her alleged inability to read the documents made her feel she had no choice but to sign them.  Even if true, this would not by itself make her consent involuntary.  There is no indication that officers used threats of violence against her, and Plaintiff describes previous encounters with the same officers on her property as "pleasant" and "cordial."  Affidavit of Arleen Krippene [Doc. 54-1] at 3.

Plaintiff also relies on the fact that officers threatened to obtain a warrant if she did not consent.  Threats to obtain a warrant are not per se coercive, and courts have generally found that the validity of consent is not affected by such statements where police have probable cause to obtain a warrant anyway.  *See Cruz-Mendez,* 467 F.3d at 1267–68; 4 Wayne LaFave, *Search & Seizure* § 8.2(c) (5th ed. 2011) (collecting cases).  Here, the officers were already in possession of a valid warrant.

Lastly, the Court is not persuaded by Plaintiff's argument that the inclusion of "Animal Services Center" in the release negates Plaintiff's consent.  Thus, based on the totality of the circumstances, the Court finds that there is no genuine dispute that Plaintiff voluntarily consented to the release of the animals listed in the Release of Ownership Worksheet.

B.  <u>Genuine Issues of Material Fact Exist Regarding Defendants' Seizure of Plaintiff's
Chickens and Rabbit.</u>

Plaintiff argues that the Release of Ownership Worksheet does not apply to the chickens
and rabbit that were also seized and allegedly destroyed by Defendants. Response to Mace
Motion [Doc. 54] at 30.  Furthermore, Plaintiff argues that Defendants exceeded the scope of the
warrant by seizing these animals, as the warrant and Mace Affidavit only discuss the seizure of
dogs and no other animals.  *Id.* at 32.  Defendants argue that because they marked the checkbox
on the Release of Ownership Worksheet labeled "Other," the release also applies to Plaintiff's
chickens and rabbit.  Mace Reply [Doc. 60] at 23.  However, Defendants' argument is negated
by the fact that the "Other" section only lists "Multiple Dogs/Cats" in the description of animals
to be released.  Release of Ownership Worksheet [Doc. 54-6] at 1.

The standard for measuring the scope of a suspect's consent under the Fourth Amendment
is that of objective reasonableness.  *Florida v. Jimeno*, 500 U.S. 248, 251 (1991).  Defendants do
not contest that the seizure and destruction of Plaintiff's property without her consent and outside
the scope of a warrant would violate Plaintiff's clearly established constitutional rights.
Furthermore, the Court notes that even where individuals give officers blanket consent to search
or seize property, courts have held that it may be objectively unreasonable for officers to rely on
that individual's consent to destroy or inflict damage on property.  *See Jimeno*, 500 U.S.
at 251−52; *United States v. Osage*, 235 F.3d 518, 520 (10th Cir. 2000) (collecting cases).  Here,
it would be objectively unreasonable for officers to rely on the Release of Ownership Worksheet
as permission to seize and allegedly destroy animals not listed therein.

Therefore, the Court finds that there are genuine issues of material fact concerning whether Plaintiff consented to release of her chickens and rabbit.  Accordingly, Defendants are not entitled to qualified immunity on this issue.

C. Genuine Issues of Material Fact Exist Regarding Defendants' Actions Towards Plaintiff's Remaining Physical Property.

Plaintiff alleges that the day following her arrest, Defendants Hall, Marion, Mace, Sedillo, and Saavedra returned to her property with four inmates from the Cibola County Jail, took down and removed her fences, "destroyed personal property unrelated to the case," and "le[ft] behind piles of destroyed property, pipes shoved through dog houses, overturned stairs, and an axe stuck in one of the dog houses."  Complaint [Doc. 1-1] at 9, ¶¶ 74–81.  Plaintiff argues that the removal of her fences was also destruction of her property.  Valdez Response [Doc. 58] at 5.  Other than the above statements, Plaintiff does not explain to what specific property she refers.

Defendant Mace admitted at Plaintiff's criminal trial that the officers returned to Plaintiff's property and "took the fencing so they couldn't — after we left couldn't come back and start housing animals again."  Response to Mace Motion [Doc. 54] at 32; Transcript of Proceedings [Doc. 54-3] at 10.  Plaintiff argues that this admission demonstrates that Defendants were not on her property for the purpose of collecting evidence or any other legitimate purpose.

Defendants contend that they returned to Plaintiff's residence to collect evidence and that no destruction of property occurred while they were there.  Valdez Motion [Doc. 46] at 17.  They admit they removed the fencing but left Plaintiff's doghouses at the scene "because they were in poor condition and considered a health hazard."  Valdez Motion [Doc. 46] at 6.  Defendant Mace argues further that the subjective intent of police officers is not relevant in determining whether

their actions were objectively reasonable, and thus constitutionally permitted.   Mace Reply [Doc. 60] at 24.   He also argues that the warrant authorized the taking of the forty chain-link-fence panels taken as "items used to facilitate care and or maintenance" of the animals.   Mace Reply [Doc. 60] at 24.

With respect to Plaintiff's claim regarding the taking of her fences, Plaintiff's only argument regarding the Warrant to Seize Animals is that there was no probable cause for it to issue.   Plaintiff has made no argument in the alternative about what items the warrant authorized to be seized, nor whether the warrant violated the Fourth-Amendment requirement that items to be seized be particularly described.   Nor has she moved to file a surreply to respond to Defendant Mace's argument that the seizure of her fences was authorized by the warrant.   As a result, Plaintiff has failed to show that her fences were not "items used to facilitate care and or maintenance" of her animals.   Thus, Plaintiff has failed to show that the seizure of her fences was not authorized by a valid warrant, and therefore, she has not met her burden to show that her constitutional rights were violated.   Accordingly, Defendants are entitled to qualified immunity with respect to the seizure of the fences.

With respect to the destruction of Plaintiff's "other property," the Court agrees with Defendants that the ultimate inquiry is whether the officers' actions were objectively reasonable, and that officers' subjective intent is not generally to be considered where there is no dispute over the objective actions officers took.   *See Anderson v. Creighton*, 483 U.S. 635, 641 (1987); *Keylon v. City of Albuquerque*, 535 F.3d 1210, 1218 (10th Cir. 2008).   Here, however, the actions of Defendants are in dispute.   Plaintiff alleges that Defendants destroyed her property, "leaving behind piles of destroyed property, pipes shoved through dog houses, overturned stairs,

and an axe stuck in one of the dog houses." Complaint [Doc. 1-1] at 9, ¶¶ 74−81. While Defendants deny destroying property, the admission about Defendants' motivations is relevant in determining what Defendants actually did the day they returned to Plaintiff's property.

The Court's role at the summary judgment stage is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial. *Liberty Lobby*, 477 U.S. at 249. Viewing the facts in the light most favorable to the non-moving party, the Court determines that there are genuine disputes of material fact as to whether Defendants destroyed Plaintiff's property. Accordingly, while Defendants are entitled to qualified immunity with regard to the seizure of Plaintiff's fences, Defendants are not entitled to qualified immunity with regard to Plaintiff's claim that they destroyed other property.

### III. Plaintiff's Claim of Arrest Without Probable Cause in Violation of the Fourth and Fourteenth Amendment

In her Complaint, Plaintiff asserted a claim against Deputy Morlang for arrest without probable cause. Complaint [Doc. 1-1] at 13; Mace Motion [Doc. 42] at 1; Valdez Motion [Doc. 46] at 1. Defendants asserted qualified immunity regarding Plaintiff's claim against Deputy Morlang. Valdez Motion [Doc. 46] at 10–14. Since Defendants filed their motion, Deputy Morlang was dismissed with prejudice. Stipulation of Dismissal of Ron Morlang With Prejudice [Doc. 57]. Because Plaintiff's claim was only asserted against Deputy Morlang, the Court notes that this claim is dismissed in its entirety. The parties agree that the arguments presented by the Valdez Motion on this issue are moot. Response to Valdez Motion [Doc. 58] at 1; Valdez Reply [Doc. 62] at 2 n.1. Therefore, the Court shall deny Defendants' motion on this issue as moot.

### IV. Plaintiff's Claim of Malicious Prosecution in Violation
### of the Fourth and Fourteenth Amendments

Plaintiff argues that Defendants violated her right to be free from malicious prosecution because there was a lack of probable cause to arrest and pursue felony charges against her for extreme cruelty to animals.[4]  Response to Mace Motion [Doc. 54] at 33; Response to Valdez Motion [Doc. 58] at 16.  She alleges that Defendant Marion fabricated the criminal complaint against her and lied on his Probable Cause Statement when he stated that Plaintiff was under court order to reduce her animals to 15, when in fact the number was 50.  Response to Valdez Motion [Doc. 58] at 9.  Plaintiff further alleges that Defendant Marion and Defendant Mace both lied to the grand jury in obtaining her criminal indictment.  Response to Mace Motion [Doc. 54] at 33–34; Response to Valdez Motion [Doc. 58] at 9.  Defendants argue that any misstatements in the Probable Cause Statement are not material and that probable cause existed to pursue felony charges.  Valdez Motion [Doc. 46] at 15.

In order to prove malicious prosecution in a § 1983 claim, Plaintiff must show that "(1) the defendant caused the plaintiff's continued confinement or prosecution; (2) the original action terminated in favor of the plaintiff; (3) there was no probable cause to support the original arrest, continued confinement, or prosecution; (4) the defendant acted with malice; and (5) the plaintiff sustained damages."  *McCarty v. Gilchrist*, 646 F.3d 1281, 1285 (10th Cir. 2011).  Probable cause only requires a "reasonable belief of guilt."  *Id.* at 1286.  In determining whether there was probable cause to prosecute, the reviewing court considers whether, excluding the

---

[4]   Plaintiff's Complaint only alleges malicious prosecution against Deputy Morlang and Defendant Marion. Complaint [Doc. 1-1] at 13–14.  However, Defendant Mace asserts qualified immunity with respect to this claim, and Plaintiff has responded.  Mace Motion [Doc. 42] at 24; Response to Mace Motion [Doc. 54] at 33–34.  Since the Court must determine probable cause with respect to the malicious prosecution claim against Defendant Marion, and the resolution of that issue is a common question of law with respect to any malicious prosecution claim brought by Plaintiff, the Court necessarily resolves Defendant Mace's motion as well.

falsified inculpatory evidence or including the withheld exculpatory evidence, probable cause still existed to prosecute.  *Id.*; *Wolford v. Lasater*, 78 F.3d 484, 489 (10th Cir. 1996).  Under New Mexico law, felony extreme cruelty to animals is defined as "(1) intentionally or maliciously torturing, mutilating, injuring or poisoning an animal; or (2) maliciously killing an animal."  NMSA 1978, § 30-18-1(E) (2007).

First, the Court notes that Defendants Marion and Mace are absolutely immune for their testimony before the grand jury.  *See Rehberg v. Paulk*, 132 S. Ct. 1497, 1506 (2012).  Second, the Court determines that after removing any contested or false statements from Defendant Marion's Statement of Probable Cause, Defendant Marion still had probable cause upon which to file a criminal complaint for extreme cruelty to animals.  The Statement of Probable Cause includes (1) that the 15 animals found on Plaintiff's property were "near death or extremely emaciated," (2) that two dead dogs were found at the scene, which "appeared to have starved to death," and (3) that two 30-gallon containers full of dog food as well as an estimated 200 cans of dog food were found.  Statement of Probable Cause [Doc. 46-4] at 1–2.  Plaintiff does not contest these statements.  Defendants argue that these facts were sufficient for Defendant Marion to reasonably believe that Plaintiff was "intentionally or maliciously injuring the fifteen living animals found by the veterinarian . . . by intentionally failing to feed them the food she had available or by otherwise allowing them to starve."  Valdez Reply [Doc. 46] at 15.  The Court agrees.  Therefore, Plaintiff has failed to meet her burden to establish that a constitutional violation occurred.  As a result, the Court holds that Defendants Marion and Mace are entitled to qualified immunity with respect to Plaintiff's claim of malicious prosecution.

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that Defendant Tony Mace's Motion for Summary Judgment Based on Qualified Immunity and Memorandum of Points and Authorities [Doc. 42] is **GRANTED IN PART** and **DENIED IN PART** as follows:

    (1) **GRANTED** with respect to Plaintiff's claim that Defendant Mace violated her right to only have warrants issue upon probable cause;

    (2) **GRANTED** with respect to Plaintiff's claims of deprivation of property with respect to her cats, dogs, and fences;

    (3) **DENIED** with respect to Plaintiff's claim of deprivation of property with respect to her chickens, rabbit, and "other property;" and

    (4) **GRANTED** with respect to Plaintiff's claim of malicious prosecution;

**IT IS FURTHER ORDERED** that Defendants Johnny Valdez, Felix Saavedra, Harry Hall, Bill Marion, Ron Morlang, and Yolanda Sedillo's Motion for Summary Judgment Based on Qualified Immunity and Memorandum of Points and Authorities in Support Thereof [Doc. 46] is **GRANTED IN PART** and **DENIED IN PART** as follows:

    (1) **GRANTED** with respect to Plaintiff's claims of deprivation of property with respect to her cats, dogs, and fences;

    (2) **DENIED** with respect to Plaintiff's claim of deprivation of property with respect to her chickens, rabbit, and "other property;"

    (3) **DENIED as moot** with respect to Ron Morlang's entitlement to qualified immunity due to his dismissal; and

    (4) **GRANTED** with respect to Plaintiff's claim of malicious prosecution.

Upon resolution of Defendants' motions, Plaintiff's sole remaining claim against Defendants Valdez, Saavedra, Hall, Marion, Mace, and Sedillo is for deprivation of property with respect to her chickens, rabbit, and "other property" in violation of the Fourth and Fourteenth Amendments.

**IT IS SO ORDERED**.

_____
**STEPHAN M. VIDMAR**
**United States Magistrate Judge**
**Presiding by Consent**